UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RICHARD B. KING, JR., ET AL         CIVIL ACTION NO. 10-cv-1774

VERSUS                              JUDGE STAGG

TAMMY R. MARTIN, ET AL              MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

**Introduction**

Before the court is Plaintiffs' Motion to Disqualify Defense Counsel. Doc. 70. For the reasons that follow, the motion is denied.

**Background Facts**

Tammy Martin and Amy Carlisle ("the Sellers"), inherited by a 2008 Judgment of Possession an undivided interest in property located in Red River and Natchitoches Parishes. In July 2009, the Sellers sold their undivided interest in the succession property to Richard B. King, Jr., Renee Poole King, and Kyle L. King ("the Kings").

The property is divided into "Tract A" and "Tract B." The Sellers' deed to the Kings described the tracts exactly as they were described in the 2008 Judgment of Possession by which the Sellers acquired the property. The Kings paid the Sellers $175,000, total, for both Tract A and Tract B.

About four months later, and without notice to the Kings, the Sellers executed a Contract to Buy and Sell and they agreed to sell Tract A and Tract B to Edgar Cason. Doc. 60-1. According to the Contract to Buy and Sell, the consideration for the sale of Tract A

was $196,000 and the consideration for Tract B was $209,000, making the total consideration for Tracts A and B $405,000.

The contract acknowledged that the Sellers did not then own title to Tract B, and that there were clouds on the title to Tract A. With regard to Tract A, the Sellers and Cason agreed:

- The King deed created a cloud on the title to Tract A.

- Sellers have a claim against the Kings to have the deed rescinded for lesion beyond moiety.

- Subject to Cason receiving good and merchantable title from the Sellers, including the mineral interest, the consideration will be paid by Cason within five business days of the rendition of a final judgment in a court of competent jurisdiction that removes the clouds on the title of Tract A.

With regard to Tract B, the Sellers and Cason agreed:

- The Sellers executed the King deed, and it is subject to rescission for lesion beyond moiety.

- In the event the King deed is rescinded in a final judgment of court of proper jurisdiction, the Sellers will execute a warranty deed to Cason.

The contract also discusses legal action to remove the clouds on the title to Tract A and to resolve the claim for lesion beyond moiety with regard to Tracts A and B. Specifically, Cason and the Sellers agreed:

- Cason will choose the law firm that will pursue the removal of the clouds and the claim to rescind the prior deed for lesion.

- Cason will pay all costs associated with the pursuit of those claims.

- The Sellers agree to cooperate with the law firm chosen by Cason in order to remove the clouds and pursue the claim of lesion.

- Neither the Sellers nor Cason can compromise or settle any claims regarding the removal of the clouds or the claim for lesion without the mutual consent of the other.

- In the event the Sellers and Cason are not successful in removing the clouds or the claim for lesion, then within five business days of the rendition of an unfavorable judgment, Cason will quitclaim Tract A to the Sellers.

The Sellers, on the same day they entered the contract with Cason, executed a deed in favor of Cason to Tract A for the consideration of $196,000 ("the Cason deed"). Doc. 1-2. With regard to Tract A, the King deed (Doc. 40-5) and the Cason deed (Doc. 1-2) are identical, except that the King deed references Tract A in *Range 9*, but the Cason deed references Tract A in *Range 8*. Tract B was apparently not a part of the attempted sale by the Sellers to Cason.

A few days later, on December 4, 2009, the Kings received from the Sellers a petition filed in state court for rescission of sale of an immovable on account of lesion beyond moiety and to quiet title. The Sellers alleged in the petition that they did not own any land in Range 9 and, therefore, the description in Tract A in the King deed is erroneous.

The Kings, in November 2010, filed against the Sellers this federal complaint based on diversity jurisdiction. The Kings argue that the typographical error that described Tract A in Range 9 instead of Range 8 was the result of a typographical error created over 20 years ago in the public record and carried forward into the King deed. They allege that Sellers' attempt to sell Tract A to Cason is the result of negligence and civil fraud. The Kings seek damages and reformation of the deed to correct the typographical error.

**Plaintiffs' Motion to Disqualify Defense Counsel**

The Kings allege that James Bethard, Henry Bethard and Edwin Byrd ("Defense Counsel") should be disqualified due to multiple undisclosed present and past conflicts of interest in violation of Louisiana Rules of Professional Conduct 1.7 (concurrent conflict of interest) and 4.3 (dealing with unrepresented parties). More specifically, the Kings argue:

- Defense Counsel did not disclose their conflicts of interest to the Sellers or Cason;

- The Bethards dealt with the Sellers when they were unrepresented, giving the misunderstanding that he was representing them at the same time he was representing Cason;

- The Buy/Sell Agreement and the Cason Deed create conflicting obligations between the Sellers and Cason, including a guaranty of title when the Bethards knew the Sellers had previously sold the property to the Kings;

- There is a potential lesion beyond moiety claim between the Sellers and Cason, which cannot be waived, and of which the Sellers were not advised by Defense Counsel;

- The Sellers have rejected the Kings' reasonable settlement offer, and the rejection exposes clear proof that the Sellers and Cason have competing and conflicting goals in the litigation;

- Defense Counsel failed to advise the Sellers of their obligations under the law, including the duty to make a demand against the Kings for the return of the

>   property or for payment of the balance between the price paid by the Kings and the value of the property; and
>
> - Defense Counsel included in the Cason Buy/Sell agreement a provision whereby Cason can veto any settlement, including one which would result in the Sellers receiving a sum greater than that offered by Cason.

**Standing**

The Sellers argue that The Kings – who were never clients of Defense Counsel – lack standing to prosecute a motion to disqualify. The Sellers attach a copy of the transcript from the related state court case where the state district judge denied a similar motion to disqualify because the Kings lacked standing to complain of alleged conflicts in the relationship between Defendants, Cason, and Defense Counsel. Defendants' brief cites Indest v. Sherman, 894 So.2d 510 (La. App. 5 Cir. 2005) in support of that standing argument, and they state that other jurisdictions addressing the issue have reached the same conclusion. However, the U.S. Fifth Circuit reached the opposite conclusion in Brown & Williamson Tobacco v. Daniel Intern. Corp., 563 F.2d 671, 674 (5th Cir. 2007)("And appellant has standing to seek disqualification even though it is not an aggrieved client because its attorneys are authorized to report any ethical violations committed in the case."); see also Hughes v. Pogo Producing Co., 2009 WL 1938988 (W.D. La. 2009)(same). Accordingly, the Sellers' standing argument is not persuasive.

**Conflicts of Interest**; **Delay in Seeking Disqualification**

Motions to disqualify are generally disfavored and require a high standard of proof so as not to deprive a party of its chosen counsel. FDIC v. United States Fire Ins. Co., 50 F.3d 1304 (5th Cir. 1995). Conflicts of interests are best-settled between the client and his attorney, and the party moving for disqualification must show an actual conflict – not some hypothetical one. Id. at 1313-1314. A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion. Hertz Corp. v. Caulfield, 1992 WL 53610 (E.D. La. 1992). A litigant may not delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of the case has been completed. Id.

The Sellers argue that the Kings waived the right to request disqualification by not raising the issue earlier. The Sellers state that the Kings have at all times (since 2009) known of the joint representation of Cason and the Sellers. However, the record suggests that the Kings did not obtain a copy of the Cason Buy/Sell agreement until shortly after May 10, 2012, when Attorney Alan Pesnell wrote a letter to Defense Counsel seeking all agreements between the Sellers and Cason. The Motion to Disqualify was filed on August 28, 2012 (Doc. 70). Given the Kings' belated discovery of the Cason Buy/Sell agreement, the court cannot conclude that the Kings waived this issue by not raising it earlier.

**Rule of Professional Conduct 4.3**

The Kings argue that Defense Counsel improperly communicated with the Sellers while representing Cason. Rule 4.3 provides:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in a matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client.

The court has reviewed the affidavits/statements of Cason and the Sellers regarding the chronology of the events and contacts between Defense Counsel and the Sellers. The Sellers do not complain about improper contacts by Defense Counsel, and they re-affirm their desire to be represented by Defense Counsel. Despite the Kings' suspicions to the contrary, there is no evidence that Defense Counsel violated Rule 4.3.

**Rule of Professional Conduct 1.7**

The Kings argue that Defense Counsel's concurrent representation of the Sellers and Cason is unethical and has led to this "ridiculous mess." Rule 1.7 provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or
>
> > (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

The Rule 1.7 analysis is more difficult for the court. The background facts outlined above supports the Kings' argument that there is a conflict of interest between the Sellers and Cason. The apparent conflict of interest is exasperated by Cason's payment of Defense Counsel's attorneys fees and Cason's veto power over any settlement.

Nevertheless, the finding of a conflict does not end the inquiry. Rule 1.7(b) allows a client to waive a conflict of interest, provided four conditions are met. The court finds that each condition has been met. Defense counsel obviously believe they can provide competent and effective representation to Cason and the Sellers; the representation is not prohibited by law; Cason and the Sellers are not suing one another; and the affidavits of the Sellers established that they were orally advised of the conflicts and waived them. The Kings' argument that the written waiver came too late does not justify disqualification of a party's attorney. Douglass v. Valteau, 2005 WL 1431510 (E.D. La. 2005)(following oral argument on motion to disqualify, court directed party to obtain and file a written waiver to comply with Rule 1.7(b)(4)).

**Other Issues**

The Kings include other arguments in support of their motion to disqualify, including that the Bethards will be witnesses at the trial. The court has also considered each of those arguments and finds that none justify disqualification of Defense Counsel based on the record currently before the court.

**Conclusion**

The Kings are frustrated that they have been unable to resolve this case, and they obviously believe that if the Sellers had independent counsel, the Sellers would accept the Kings' reasonable settlement offer. According to the Kings: "[The Sellers] are mere captives on Cason's vessel." All of that may be true, but the Sellers are certainly *willing* captives. The court finds that the Sellers were fully informed of the potential conflicts and they have waived those conflicts as required by the rules.

Accordingly, the **Motion to Disqualify** (Doc. 70) is **denied**.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 16th day of October, 2012.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE