U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAR 2 2 2013

TONY R. MOORE, CLERK
BY ————————
                    DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

RICHARD B. KING, JR.,
RENEE POOLE KING, AND
KYLE L. KING

versus

CIVIL ACTION NO. 10-1774
JUDGE TOM STAGG

TAMMY R. MARTIN AND
AMY L. CARLISLE

## MEMORANDUM RULING

Before the court is a motion to stay filed by the defendants. See Record

Document 126. For the reasons set forth below, the defendants' motion is

**GRANTED**.

## I.  BACKGROUND AND PROCEDURAL HISTORY

A.  **Facts.**

This case arises from a convoluted dispute over property sold by the

defendants, Tammy R. Martin and Amy L. Carlisle (hereinafter collectively referred

to as the "Sellers") to the plaintiffs, Richard King, Jr., Renee King, and Kyle King

(hereinafter collectively referred to as "the Kings") in 2009.[1] One year prior to the sale, the Sellers inherited from their father an undivided 35.764% interest in two adjoining tracts of land in Red River and Natchitoches parishes ("Tract A" and "Tract B"). See Record Document 40, Exs. 1 and 2. On July 21, 2009, the Sellers conveyed their interests in Tracts A and B to the Kings, including all mineral rights, by cash deed for $175,000.00 ("the King Deed").[2] See id., Ex. 3. The legal description of Tracts A and B in the King Deed is exactly the same as that contained in the Judgment of Possession in which the Sellers inherited the property in 2008. See id., Exs. 1-3. Notably, Tract A is incorrectly described as being located in Range 9. See id.

Approximately four months after the sale to the Kings, a third party, Edward Cason ("Cason"), approached the Sellers with an unusual offer. Cason was aware of the sale to the Kings but believed it could be attacked for lesion beyond moiety, a Louisiana sales law doctrine which affords a seller of immovable property the ability

---

[1] Richard King, Jr. died after this case was filed. His wife and co-plaintiff, Renee King, was appointed administrator of his succession and substituted as plaintiff in her capacity as administrator of Richard's succession. See Record Document 16.

[2] The Purchase Agreement provides, in relevant part, that "[a]ll improvements, gas and mineral rights located in and on the land constituting a component part of the immovable property are also included in this [sic] sell." Record Document 40, Ex. 4.

to demand recission of the sale if the price paid was less than one-half of the immovable's fair market value at the time of the sale. See La. Civ. Code art. 2589. Cason believed the (potential) presence of natural gas deposits beneath Tracts A and B in the Haynesville Shale formation made the property substantially more valuable than the $175,000.00 price paid by the Kings.  Accordingly, Cason offered to purchase Tracts A and B from the Sellers for $405,000.00, and Cason and the Sellers executed a Contract to Buy and Sell in November 2009.  The Contract to Buy and Sell provided, inter alia, that Cason would fund litigation to rescind the sale to the Kings and if the litigation was successful, the Sellers would convey title to Tracts A and B to Cason.  See Record Document 60, Ex. A.  The contract acknowledges the King Deed as a cloud on the title to Tract A and that the Sellers did not own title to Tract B.

That same day, the Sellers conveyed Tract A to Cason ("Cason Deed") for $196,000.00. The legal description of Tract A matches the King Deed and the 2008 Judgment of Possession in every respect, except that the Cason Deed correctly references Tract A as being located in Range 8 whereas, as noted above, the King Deed and the Judgment of Possession incorrectly describe Tract A as being located in Range 9. See Record Document 1, Exs. A, B, and D.

3

B.     **Procedural History.**

1.     **State Court Litigation.**

On December 2, 2009, the Sellers and Cason filed suit against the Kings in state court in Louisiana for recission of sale of an immovable for lesion beyond moiety and to quiet title. See Record Document 126, Ex. 2. The Sellers and Cason amended their petition to include a claim to rescind the King Deed on the basis of fraud allegedly committed by Kyle King. See id. The Kings answered and filed a reconventional demand, seeking to nullify the Cason Deed for bad faith on the part of the Sellers, claiming that the Cason Deed created a cloud on the Kings' title, and also seeking reformation of the King Deed to correct the typographical error in the property description. See id.

A four-day bench trial was held in September 2012. On November 30, 2012, the trial court ruled in favor of the Sellers and Cason, finding the sale to the Kings lesionary because the $175,000.00 purchase price was found to be less than one-half of the fair market value of Tracts A and B. See id. Specifically, the trial court held that, under Louisiana lesion law, the value of the mineral and timber interests should be included in valuing the property. See id. Since the court had already ordered the sale rescinded because of lesion, the court ruled moot the Sellers and Cason's claim for nullification of the King Deed due to fraud on the part of Kyle King.

4

Addressing the Kings' claims, the court found no evidence that the Sellers or Cason were in bad faith, stating: "The Court has found no subterfuge by the plaintiffs . . . [the Sellers and Cason] have consistently made their actions and agreements known." See id. at 23. Accordingly, the trial court denied and dismissed the Kings' fraud claim, their claim that the Cason deed created a cloud on their title, and their claim for reformation of the King Deed. See id. The Kings have timely filed a motion for appeal. See Record Document 131, Ex. 4.

### 2. Federal Court Litigation.

On November 30, 2010, the Kings filed suit against the Sellers in this court.[3] The Kings seek damages for negligence and civil fraud on the theory that "the two defendants conspired through a series of negligent and/or intentional acts depriving the plaintiffs of property which was purchased by the plaintiffs from the defendants." Record Document 1 at 1. The Kings later amended their complaint, adding a claim to reform the King Deed such that it would correctly describe Tract A as being located in Range 8. See Record Document 33.

The Sellers answered and filed two counterclaims, seeking to rescind the sale on account of lesion beyond moiety and also to quiet title to Tracts A and B. See

---

[3] Cason was not named as a defendant in the Kings' complaint. See Record Document 1.

Record Document 13. The Sellers amended their counterclaim to add a claim to rescind the King Deed based on fraud allegedly committed by Kyle King. See Record Document 22.

The parties filed three cross-motions for summary judgment: two motions for partial summary judgment filed by the Kings and a motion for summary judgment filed by the Sellers. See Record Documents 40, 52 and 108. In their motions, the parties at various times mentioned the existence of the pending state court litigation between the parties. As noted above, the state court rendered its ruling on November 30, 2012. The Sellers subsequently attached the state court's ruling as an exhibit to their reply motion. See Record Document 120, Ex. 1. In reviewing the state court ruling, this court became concerned about its effect(s) on the instant case and recognized a need for both parties to fully brief that issue. Accordingly, the court issued a minute entry sua sponte, granting the Sellers leave to file a motion addressing the effect(s), if any, the state court ruling may have on the instant case and providing the Kings an opportunity to respond should the Sellers file a motion. See Record Document 123.

On January 30, 2013, the Sellers filed a motion in accordance with this court's minute entry. See Record Document 126. The Sellers moved to dismiss the case, arguing that the state court judgment is final and thus the instant case is barred by the

6

doctrine of res judicata.[4]  Second, the Sellers urged the court to abstain and issue a stay, citing principles of federalism, comity, and conservation of judicial resources. The Kings responded to the Sellers' motion and the Sellers replied.  See Record Documents 130 and 131.

## II.  LAW AND ANALYSIS

The Sellers argue that this court should abstain in this matter in deference to the Louisiana state court judgment.  They contend that in matters involving title to real property, courts should abstain where the state court has previously acquired jurisdiction over the property.

The Kings correctly point out that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, 116 S.Ct. 1712, 1720 (1996)(citations omitted). However, this duty is not absolute.  See id.  For example, a federal district court may

---

[4] This court was initially inclined to grant the Sellers' motion on the basis of res judicata.  However, the Sellers appear to have abandoned their res judicata claim in their reply brief, conceding the Kings' argument that the Louisiana state court judgment is not "final" because all appeals have not yet been exhausted. The court only addresses the issue to point out that this is an incorrect statement of Louisiana law.  A Louisiana judgment is final when the trial judge signs the judgment; whether all appeals have been exhausted is irrelevant for res judicata purposes.  See La. R.S. 13:4231, cmts. (a) and (d); Tolis v. Bd. of Supr's of La. State Univ., 660 So.2d 1206, 1207 (La. 1995); Energy Dev. Corp. v. St. Martin, 296 F.3d 356, 360-361 (5th Cir. 2002); Shelton v. Bd. of Sup'rs of S. Univ. & A&M Coll., 2012 WL 75040, at *2-3 (M.D. La. Jan. 10, 2012).

abstain where considerations of "proper constitutional adjudication," "regard for federal-state relations," or "wise judicial administration" warrant denying a federal forum. Colorado River Conservation District v. United States, 424 U.S. 800, 817-819, 96 S.Ct. 1236 (1976).

One of two standards govern a district court's determination of whether to exercise its discretion to stay a case based on considerations of wise judicial administration. In this circuit, the applicable standard depends on the nature of the relief sought. If the suit seeks only a declaratory judgment, the district court's discretion to stay is governed by Brillhart v. Excess Insurance Company Of America, 316 U.S. 491, 62 S.Ct. 1173 (1942). See Am. Guar. & Liab. Ins. Co. v. Anco Insulations, Inc., 408 F.3d 248, 251 (5th Cir. 2005)(citations omitted). On the other hand, if the action includes claims for both declaratory and coercive relief, a district court's discretion to stay in a suit for monetary relief is governed by the standard set forth in Colorado River. See Am. Guar., 408 F.3d at 251; see also New England Ins. Co. v. Barnett, 561 F.3d 392, 395-396 (5th Cir. 2009). In this case, the Colorado River standard governs because the plaintiffs seek coercive relief for their fraud and civil claims, even though both parties seek declaratory relief as to title to Tracts A and B.

Abstention pursuant to the Colorado River standard rests on principles such as

8

federalism, comity, and conservation of judicial resources. See Black Sea Inv., Ltd.
v. United Heritage Corp., 204 F.3d 647, 650 (5th Cir. 2000)(citation omitted).  A
district court may abstain under the doctrine when: (1) parallel proceedings are
pending in federal and state court; and (2) certain "exceptional circumstances" are
present. See Colorado River, 424 U.S. at 813, 96 S.Ct. at 1244; Saucier v. Aviva Life
& Annuity Co., 701 F.3d 458, 462 (5th Cir. 2012).

## A.    Parallel Proceedings.

Generally, cases are "parallel" when the actions involve the same parties and
the same issues. See e.g., Am. Guar., 408 F.3d at 251; Stewart v. W. Heritage Ins.
Co., 438 F.3d 488, 491 (5th Cir. 2006).  The Kings argue that the state and federal
cases are not "parallel" because the federal case involves fraud claims not raised in
the state court case. They further argue that the parties are not the same because Edgar
Cason, one of the plaintiffs in the state court case, is not a party to the federal
litigation. See Record Document 130. Thus, the Kings would have the court read the
parallel requirement of Colorado River strictly, to require precisely the same parties
and issues.

The Fifth Circuit has rejected this rigid interpretation, stating that "there need
not be applied in every instance a mincing insistence on precise identity" of the
parties and issues. See Brown v. Pac. Life Ins. Co., 462 F.3d 384, 395 n.7 (5th Cir.

2006); RepublicBank Dallas Nat. Ass'n v. McIntosh, 828 F.2d 1120, 1121 (5th Cir.

1987).  District courts in this circuit have found cases to be parallel when the cases

consist of "substantially the same parties litigating substantially the same issues" even

though they are "not absolutely symmetrical." Extreme Energy Servs., LLC v. Gator

Energy Operating, LLC, 2011 WL 2747710, at *3 (W.D. La. June 24, 2011)(quoting

Kenner Acquisitions, LLC v. BellSouth Telecomms., Inc., 2007 WL 625833, at *2

(E.D. La. Feb. 26, 2007)).

The Kings strain to articulate a distinction between their bad faith claim in state

court and fraud claim in this court.  First, they argue the claims are different because

the state court claims "relate only to an essential element of the claim to quiet title,"

while the federal court fraud action "concerns the actions of Defendants after the

sale."  Record Document 130 at 8-10.  After reviewing the federal court complaint

and the state court reconventional demand, the court is not convinced that the Kings'

claims are materially different.  The federal negligence claim alleges the Sellers

negligently deeded title to Tracts A and B to Cason, and the fraud claim arises from

the "attempted and/or purported conveyance of property" to Cason.  Record

Document 1.  Even if the Kings could articulate a difference between the claims, the

court finds the claims are "substantially similar" so as to be considered parallel.  The

claims arise from the same operative facts, the typographical error in the King Deed

and subsequent transfer to Cason.  Moreover, the issues in both cases are the same–

whether the conduct of the Sellers and Cason was fraudulent and whether the sale to

the Kings was lesionary.  Simply stated, the fraud and bad faith claims represent the

same or substantially similar issues.

Second, the court finds that the parties are substantially similar.  The only

difference between the state and federal court litigation is the absence of Cason in this

litigation.  It is apparent that Cason was not named a defendant in this matter solely

for purposes of maintaining diversity of citizenship subject matter jurisdiction.  The

magistrate judge previously found that the Sellers and Cason's interests were

"perfectly aligned," and it is difficult to ascertain how Cason's presence would alter

the substance of the case.  See Record Document 83 at 7.  Therefore, the court finds

the parties are substantially similar and the two cases meet the parallel requirement

of Colorado River.

## B.      Exceptional Circumstances.

Having determined that the federal and state cases are parallel, the court turns

to whether exceptional circumstances warrant a stay.  See eg., Transocean Offshore

USA, Inc. v. Catrette, 239 F.App'x. 9, 12 (5th Cir. 2007). The Supreme Court has

identified six factors to analyze in determining whether "exceptional circumstances"

exist: (1) assumption by either court of jurisdiction over a res; (2) relative

inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the extent to which federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction. See Wilton v. Seven Falls Co., 515 U.S. 277, 285-286, 115 S.Ct. 2137, 2142 (1995)(citing Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,460 U.S. 1, 15-16, 103 S.Ct. 927, 936-937 (1983)); see also Kelly Inv., Inc. v. Cont'l Corp., 315 F.3d 494, 497 (5th Cir. 2002).  However, "[t]he decision whether to stay or dismiss a federal action on grounds of wise judicial administration does not rest on a mechanical checklist, but on a careful balancing of the important factors [. . .] relevant to the decision as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone, 460 U.S. at 16, 103 S.Ct at 929.

The first factor, whether either court has assumed jurisdiction over a res, "implicates the rule that once a court, state or federal, has assumed jurisdiction over property, then that court may exercise its jurisdiction to the exclusion of any other court and 'the res in question is withdrawn from the jurisdiction of any other court.'" Kenner Acquisitions, at *3 (quoting Smith v. Humble Oil & Refining Co., 425 F.2d 1287, 1288 (5th Cir. 1970)); see also Colorado River, 424 U.S. at 818, 96 S.Ct. at

12

1246 ("It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts."). The state suit, in which the Sellers seek to rescind the King Deed and quiet title to Tracts A and B, is clearly a case in which the state court exercised jurisdiction over the same property at issue in this case. It is equally clear that the state court exercised jurisdiction <u>first</u>, given that it was filed years before this federal suit, and that judgment has already been rendered. Because the state court exercised jurisdiction over the property before the federal court, the first <u>Colorado River</u> factor weighs in favor of abstention.

The relative inconvenience of the forums factor is neutral, as both this court and the state court are located in northwest Louisiana. Thus, this factor supports exercising federal jurisdiction. See <u>Murphy v. Uncle Ben's, Inc.</u>, 168 F.3d 734, 738 (5th Cir. 1999)(finding that the inconvenience factor weighed against abstention where both suits were pending in south Texas).

Third, the court is to consider whether abstaining would avoid piecemeal litigation. "The real concern at the heart of the third <u>Colorado River</u> factor is the avoidance of piecemeal litigation, and the concomitant danger of inconsistent rulings with respect to a piece of property." <u>Black Sea</u>, 204 F.3d at 650-651. If the case were to continue, this court would be deciding the same issues regarding the same

13

property–namely, whether the sale to the Kings was lesionary and whether the Sellers acted fraudulently.  It is conceivable that this court could issue a ruling contrary to the state court's judgment. See Kenner Acquisitions, at *4. For instance, this court could rule that the sale to the Kings was not lesionary and quiet title to Tracts A and B in favor of the Kings.  The danger of this type of inconsistent ruling with respect to real property is precisely the concern "at the heart" of the third Colorado River factor. Black Sea, 204 F.3d at 650-651. Therefore, the third factor weighs in favor of abstention.

The fourth factor, the order in which jurisdiction was obtained, also weighs in favor of abstention. As discussed above, the state court case was filed in 2009, while the instant federal case was not commenced until approximately one year later in 2010. The fact that the state court has progressed to the point of judgment having already been rendered weighs significantly in favor of abstention. See Moses H. Cone, 460 U.S. at 21, 103 S.Ct. at 940 ("Thus, priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."). Therefore, this factor supports abstention.

The fifth factor asks the extent to which federal law provides the rules of decision on the merits. Because the court's subject matter jurisdiction in this matter

14

is based on diversity of citizenship pursuant to 28 U.S.C. § 1332, Louisiana law provides the rules of decision on the merits. See Erie R. Co. v. Tompkins, 304 U.S. 64, 585 S.Ct. 817 (1938); Holt v. State Farm Fire & Cas. Co., 627 F.3d 188, 191 (5th Cir. 2010). No federal law issues are implicated by the parties' claims. Under Fifth Circuit jurisprudence, however, "[t]he absence of a federal law issue does not counsel in favor of abstention." Black Sea, 204 F.3d at 651 (citing Evanston Ins. Co. v. Jimco, 844 F.2d 1185, 1192 (5th Cir. 1988)). Thus, the fifth factor can only weigh against abstention, and not for it. See Evanston, 844 F.2d at 1193. Accordingly, this factor is, at most, neutral.

Finally, the court examines if the state proceedings are adequate to protect the rights of the party invoking federal jurisdiction. There is no reason why the state court cannot adequately protect the interest of the Kings, the party who invoked this court's jurisdiction. However, like the fifth factor, this factor cannot weigh in favor of abstention; it can only be neutral or weigh against abstention. See Black Sea, 204 F.3d at 651. Accordingly, the sixth factor is neutral.

Applying the Colorado River factors, three weigh in favor of abstention, two are neutral, and one weighs against abstention. However, as noted above, the court should not rest its decision to abstain on a mechanical application of the factors, but rather on a careful balancing of these considerations. See Moses H. Cone, 460 U.S.

15

at 16, 103 S.Ct. at 937.  Having carefully balanced and analyzed the <u>Colorado River</u>

factors, this court concludes that abstention is appropriate in this case.  Given that the

state court has issued a judgment involving title to real property, abstaining would

best serve the interests of federalism, comity and conservation of judicial resources.

### III.  CONCLUSION

Because the court finds abstention is warranted pursuant to the <u>Colorado</u>

<u>River</u> standard, the defendants' motion to stay is **GRANTED** and this case is

**STAYED**.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the _____ day of

March, 2013.

_____

JUDGE TOM STAGG
